UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

MARK PICOZZI,

Plaintiff,

v.

STATE OF NEVADA, *et al.*,

Defendants.

Case No. 2:22-CV-01011-ART-EJY

ORDER ON SUMMARY JUDGMENT (ECF No. 354)

Plaintiff Mark Picozzi ("Mr. Picozzi") brings this suit under 42 U.S.C. § 1983 for violations of his First, Eighth, and Fourteenth Amendment rights arising out of his time at High Desert State Prison ("HDSP"). (ECF No. 10). Defendants filed the present Motion for Summary Judgment, arguing that Mr. Picozzi's entire lawsuit was barred by the doctrine of claim preclusion, or alternatively, that they committed no constitutional violation or were subject to qualified immunity. (ECF No. 354.) Mr. Picozzi responded (ECF No. 385), and Defendants replied (ECF No. 386).

## I. Background

Mr. Picozzi alleges that since he arrived at HDSP in 2016, he has been consistently denied or intentionally delayed medical treatment for his chronic hemorrhoids and back pain despite Defendants' knowledge of the severity of his conditions. (ECF No. 10.) He claims that as a result of his regular grievances and previous lawsuits surrounding unconstitutional conditions, he was retaliated against by Defendants who intentionally lost or withheld his grievances, legal materials, and personal correspondence; submitted false disciplinary charges; and denied him access to the law library. (*Id.*) This also resulted, in Mr. Picozzi's view, in him being denied access to the courts because Defendants withheld his

medical records or refused to properly send them to the court. (*Id.*) His First Amended Complaint (FAC) was screened on August 31, 2022, and the following claims were allowed to proceed:

1. First Amendment Retaliation against Defendants James Scally, Associate Warden of HDSP; Julie Williams, Jennifer Nash, Associate Warden of HDSP, and Ronald Oliver, Associate Warden of HDSP;
2. Eighth Amendment claim for deliberate indifference to his hemorrhoid condition against Defendants Dante Famy, doctor at HDSP; Gregory Bryan, doctor at HDSP; Gregory Martin, a nurse practitioner/physician's assistant at HDSP; George Pele-Taino, a nurse at HDSP; Marie Cervanes, a nurse at HDSP; Jaymie Cabrera, a nurse case manager at HDSP; Rio Manalang, an Advanced Practice Registered Nurse at HDSP; Correctional Officer J. Arrey, Senior Correctional Officer Hennequin, Correctional Officer Francis Moka, Senior Correctional Officer Livingston, Correctional Officer Torres, and Lieutenant J. Barth;
3. Eighth Amendment claim for deliberate indifference to Mr. Picozzi's back condition against Defendants Famy, Bryan, Martin, Pele-Taino, Cervanes, Cabrera, Manalang;
4. Eighth Amendment claim for deliberate indifference to unsanitary conditions against Defendants Famy, Bryan, Martin, Pele-Taino, Cervanes, Cabrera, Manalang, and Barth;
5. Fourteenth Amendment claim for denial of due process during disciplinary hearing against Defendants Correctional Officer Dean Ontiveros and Correctional Officer A. Alverez for a hearing on an abusive-language charge; and
6. Fourteenth Amendment claim for denial of access to the courts against Defendants Jacque Graham, law library supervisor at HDSP;

Nash, Danyele Sipes a.k.a. Danyele Madsen, secretary to Wardens Brian Williams and Calvin Johnson at HDSP; William Kuloloia, caseworker at HDSP; Kristi Roberson, caseworker at HDSP; Barth, Ontiveros, and Pele-Taino.

Defendants moved for summary judgment on these claims, arguing that 1) Mr. Picozzi's entire state case is precluded by two previous state lawsuits: *Picozzi v. State of Nevada, et al.*, A-18-780482-C (First State Case), filed in March 2018 and closed in March 2021; and *Picozzi v. State of Nevada, et al.*, A-22-851499-C (Second State Case), filed in April 2022 and closed September 2023; and 2) that Mr. Picozzi's claims fail on the merits because he cannot establish genuine

**II. Legal Standard**

**A. Summary Judgment**

Summary judgment is appropriate when the record shows "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A fact is "material" if it could affect the outcome of the case. Id. at 248.

In considering a motion for summary judgment, "all reasonable inferences are drawn in the light most favorable to the non-moving party." *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). However, if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex*, 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

A party cannot avoid summary judgment by alleging facts in an opposition

that were not specially alleged in the complaint. *See Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings.") (citation and quotation marks omitted).

## III. Analysis

Defendants argue that Mr. Picozzi's entire federal suit is barred by the doctrine of claim preclusion because he brought two prior state cases against the NDOC that were dismissed. (ECF No. 354 at 14.) In the alternative, Defendants argue that Mr. Picozzi's claims fail on the merits because he has not proven that Defendants personally participated in his alleged constitutional violations and he cannot establish a genuine dispute of material fact as to whether any violations occurred. (*Id.* at 2.)

### A. Claim Preclusion

Defendants argue that claim preclusion applies to this case because Mr. Picozzi's state cases involved the same claims and parties and both cases ended in a valid final judgment. (ECF No. 384 at 15.) Mr. Picozzi does not dispute that his state cases were dismissed or that the parties and claims were not similar but argues that he was prevented from serving the Defendants because of their own actions. (ECF No. 385 at 11-12.)

State court judgments have a preclusive effect on federal section 1983 actions. *Clements v. Airport Authority of Washoe County*, 69 F.3d 321, 328 (9th Cir. 1995) (citing *Migra v. Warren City Sch. Dist.*, 465 U.S. 75 (1984)). Federal courts "must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered." 28 U.S.C. § 1738. Therefore, the court applies Nevada law concerning claim preclusion.

There are three elements of claim preclusion under Nevada law: "(1) there has been a valid, final judgment in a previous action; (2) the subsequent action

is based on the same claims or any part of them that were or could have been brought in the first action; and (3) the parties or their privies are the same in the instant lawsuit as they were in the previous lawsuit, or the defendant can demonstrate that he or she should have been included as a defendant in the earlier suit and the plaintiff fails to provide a 'good reason' for not having done so." *Weddell v. Sharp*, 350 P. 3d 80, 81 (Nev. 2015).

The party asserting claim preclusion has the burden of establishing these elements. *Save Bull Trout v. Williams*, 51 F.4th 1101, 1107 (9th Cir. 2022); *Taylor v. Sturgell*, 553 U.S. 880, 907 (2008).

The court addresses in turn the first and second state court cases.

**1. First State Case: *Picozzi v. State, et al.*, A-18-780482-C**

Mr. Picozzi filed his first state case in March 2018 in the Eighth Judicial District Court in Clark County, Nevada as *Picozzi v. State of Nevada*, *et al.*, A-18-780482-C (First State Case); he filed his First Amended Complaint in that case on September 27, 2018. (ECF No. 354-15.) As detailed below, because this case involved the same claims and parties and was dismissed by the state court, Mr. Picozzi is precluded from asserting the same claims in this case.

**a) Same Claims**

Mr. Picozzi's First State Case alleged similar violations of his First, Eighth, and Fourteenth Amendment rights that he describes in the present action. (*See generally* ECF No. 163-2.)

"The Nevada test for identical causes of action is whether the sets of facts essential to maintain the two suits are the same." *Clements v. Airport Auth.,* 69 F.3d 321, 328 n. 4 (9th Cir.1995) (citing *In re Estate of Firsching,* 578 P.2d 321, 322 (1978)). As the Nevada Supreme Court has explained, this means claim preclusion is only appropriate where "the entire subject matter of the suits is identical," *Round Hill Gen. Improvement Dist. v. B–Neva, Inc.,* 606 P.2d 176, 178 (Nev. 1980), or, in other words, where the later claim is "based upon an identical

set of facts and could have been brought simultaneously" to the first. *G.C. Wallace, Inc. v. Eighth Judicial Dist. Court ex rel. Cnty. of Clark,* 262 P.3d 1135, 1139 (Nev. 2011). Claim preclusion "does not bar claims that are predicated on events that postdate the filing of the initial complaint." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Group, Inc.*, 590 U.S. 405, 414 (2020) (quoting *Whole Woman's Health v. Hellerstadt*, 579 U.S. 582, 600 (2016)).

Although there is overlap between the allegations regarding First Amendment retaliation in Mr. Picozzi's First State Case and the present case, the claims do not appear to be identical, and Defendants fail to explain how they are. The Court next analyzes whether Mr. Picozzi's Eighth Amendment deliberate indifference and Fourteenth Amendment access to courts claims are precluded.

**(1) Eighth Amendment Deliberate Indifference to Medical Needs**

Mr. Picozzi's Eighth Amendment claim for deliberate indifference to medical needs substantially overlaps with his federal claim, except that allegations that post-date those in his First State Case are not considered the same claim for preclusion purposes.

In his First State Case, he alleged that named defendants who were medical staff were aware of x-rays Mr. Picozzi received on his back in 2016 that indicated he had serious disc damage but refused to treat him. (ECF No. 163-2 at 22.) Mr. Picozzi also alleged that in response to medical kites requesting help with his hemorrhoids, including sending bloody tissue to the nurses, that defendant nurses did not properly treat his condition. (*Id.* at 22-23.) Finally, Mr. Picozzi alleged that despite the common knowledge of his chronic hemorrhoids and back pain via colonoscopies and x-rays, he was generally refused care and had appointments, follow-ups, and second opinions continuously delayed without reason. (*Id.* at 23.)

In the present case, Mr. Picozzi brings essentially the same claims for

deliberate indifference to his medical needs. Mr. Picozzi again alleges that defendants who were medical staff were aware of his 2016 x-rays and have delayed and prolonged surgical or therapeutic intervention. (ECF No. 10 at 14.) Similarly, Mr. Picozzi alleges that the same medical professional Defendants were deliberately indifferent to the serious medical need associated with his hemorrhoid condition following a 2017 colonoscopy by "cho[osing] to do nothing." (*Id.*) Finally, he alleges that in 2020 and 2022, Defendant non-medical correctional officers failed to give him emergency medical care in response to his bleeding hemorrhoids.

Mr. Picozzi's present case and his First State Case allege deliberate indifference claims concerning his medical care from 2016 until September 27, 2018, based on an identical set of facts. Allegations after September 2018, however, including those against Defendant correctional officers could not be brought in Mr. Picozzi's First State Case.

**(2) Fourteenth Amendment Due Process Access to Courts**

Mr. Picozzi's Fourteenth Amendment claim for denial of access to the courts, like his claim under the Eighth Amendment, substantially overlaps for the years between 2016-2019, but contains allegations that post-date the filing of his amended complaint in the First State Case. The First State Case alleges that in June 2018, named defendants lost his legal documents and withheld his medical records, causing him to miss court deadlines. (ECF No. 163-2 at 9.) In the present case, Mr. Picozzi makes the exact same allegations based on an identical set of facts in this case against the same Defendants starting in 2018. (ECF No. 10 at 20.)

His present claim for access to the courts also alleges, however, that his requests for legal copies, case law, and library access and research spanned 2019 to 2022. These claims that post-date the filing of the amended complaint in the

First State Case are not precluded, since he could not have brought them in his First State Case.

**b) Same Parties**

The "same parties" factor in Nevada requires that "the same parties or their privies are involved in both cases." *Ruby*, 194 P.3d at 714. In Mr. Picozzi's First State Case, he sued Gregory Bryan, William Kululoia, Danyele Sipes, Jennifer Nash, George Pele-Taino, Marc Trotter, Kristi Roberson, Jacque Graham, and John and Jane Does in the mailroom and nurses. (ECF No. 354 at 2.) Each of these Defendants are also named in the present case. Although several more Defendants are named in the current case, there is a sufficient "commonality of interest" between the parties, all staff of NDOC and HDSP, such that the parties are in privity for the purposes of claim preclusion. *See Anderson v. Nevada Dept. of Corr.*, 2:21-cv-00514-CDS-EJY, 2025 WL 1706897, at *3 (D. Nev. June 17, 2025) (holding that where allegations arose out of the same treatment at the prison, the parties were in privity).

**c) Valid Final Judgment**

Defendants argue that the involuntary dismissal of Mr. Picozzi's First State Case operates as a valid final judgment because it is an adjudication on the merits under Nevada law.

Under Nevada Rule of Civil Procedure 41(2)(b), "[u]nless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits." Nev. R. Civ. P. 41(2)(b). A dismissal for failure to follow court rules is therefore an adjudication upon the merits even though substantive issues have not been tried. *Five Star Capital Corp. v. Ruby*, 194 P.3d 709, 715 (Nev. 2008).

Mr. Picozzi's First State Case was involuntarily dismissed after the court

issued an order to show cause why the case should not be dismissed for lack of prosecution. (ECF No. 354-15; 163-6.) Although Mr. Picozzi filed a number of motions in the early months of the case in 2018 and 2019, including motions for a temporary restraining order (TRO) and emergency injunction (ECF No. 354-16 at 6), two attempts to issue subpoenas (*id.* at 7, 8), and a motion to dismiss his case (*id.* at 8), the state court found that there was no indication that any of the documents Mr. Picozzi filed had ever been served on the defendants, and denied his motions for a TRO and subpoenas. (*Id.*)

The case then stalled for nearly two years until January 4, 2021, when a new judge was assigned to the case and issued an order to show cause why the matter should not be dismissed for lack of prosecution. (ECF No. 163-4.) On February 3, 2021, the state court received a letter from Mr. Picozzi requesting clarification in the case and set a hearing on the order to show cause for March 17, 2021. (ECF No. 163-5.) The hearing was vacated and the judge ordered the case closed as an involuntary dismissal on March 23, 2021. (ECF No. 163-6.) Whether to grant a voluntary dismissal is in the discretion of the district court. *See Maxum Indem. Ins. Co. v. A-1 All American Roofing Co.*, 299 Fed.Appx. 664, 665 (quoting *Hamilton v. Firestone Tire & Rubber Co.*, 679 F.3d 143, 145 (9th Cir. 1982)) (finding that district court did not abuse its discretion by dismissing a case with prejudice instead of granting voluntary dismissal).

Therefore, because the case was involuntarily dismissed for lack of prosecution and a failure to serve the defendants, this is a valid final judgment under Nevada law.

**2. Second State Case (*Picozzi v. State, et al.*, A-22-851499-C)**

Mr. Picozzi filed his second state case in April 2022 in the Eighth Judicial District Court in Clark County, Nevada: *Picozzi v. State of Nevada, et al.*, A-22-851499-C (Second State Case). (ECF No. 354-16.) Mr. Picozzi's Second State Case was dismissed after he filed his own voluntary motion to dismiss. (ECF No. 354-

16.)

The issue at hand is whether the second dismissal was without prejudice or an adjudication on the merits. The default rule in Nevada is that a voluntary dismissal is without prejudice. *See* Nev. R. Civ. P. Rule 41(a)(1)(B). The rule on voluntary dismissals provides, “[u]nless the notice or stipulation states otherwise, the dismissal is without prejudice.” Nev. R. Civ. P. Rule 41(a)(1)(B). Defendants argue that Mr. Picozzi’s voluntary dismissal was an “adjudication on the merits” under an exception to that rule that applies where a plaintiff “previously dismissed any federal or state-court action based on or including the same claim.” *Id.* Defendants suggest that the dismissal in the First State Case qualifies here, but do not explain how this rule would apply to a previous *involuntary* dismissal. Defendants also do not cite to any notice or stipulation in the First State Case that it was dismissed with prejudice. Without a notice or stipulation stating that the dismissal was with prejudice, the Court assumes, per the Rule, that it was without prejudice. Dismissal without prejudice is not an adjudication on the merits. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990). Therefore, Defendants have not met their burden to show that this was a valid final judgment under Nevada law, and Mr. Picozzi’s Second State Case does not have a preclusive effect on his current lawsuit.

**3. Surviving Claims**

The claims that are precluded by Mr. Picozzi’s First State Case are allegations regarding his First Amendment retaliation, Eighth Amendment deliberate indifference to medical needs, and Fourteenth Amendment access to courts claims that precede September 27, 2018, when he filed his amended complaint in his First State Case.

The Court will therefore consider all of Mr. Picozzi’s claims that post-date September 27, 2018.

**B. First Amendment Retaliation**

Mr. Picozzi alleges that he was retaliated against for complaining about his access to the law library, legal research requests, and legal requests to send evidence to the court by Defendants Williams, Nash, and Oliver intentionally losing his grievances and the documents attached to them. (ECF No. 10 at 21.) Defendants claim that Mr. Picozzi has failed to identify a genuine dispute of material fact on his retaliation claim because he has only pointed to one grievance that was not responded to and has not been chilled from filing other grievances. (ECF No. 354 at 20.)

Prisoners have a First Amendment right to file prison grievances and pursue civil-rights litigation in the courts, "and to be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012); *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004).

A retaliation claim in the prison context has five elements. *Watison*, 668 F.3d at 1114. "First, the plaintiff must allege that the retaliated-against conduct is protected." *Id.* Filing or submitting a grievance, complaint, or lawsuit about prison conditions or alleged constitutional violations is protected conduct. *Entler v. Gregorie*, 872 F.3d at 1031, 1039 (9th Cir. 2017). The form that a prisoner's complaint takes—"even if verbal"—"is of no constitutional significance, and threats to sue fall within the purview of the constitutionally protected right to file grievances." *Id.* Second, the plaintiff must allege that "the defendant took adverse action against [him]." *Watison*, 668 F.3d at 1114. "'The mere threat of harm can be an adverse action.'" *Id.* (brackets and emphasis omitted) (quoting *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009)). The third factor requires the plaintiff to "allege a causal connection between the adverse action and the protected conduct." *Id.* "Fourth, the plaintiff must allege that the 'official's acts would chill or silence a person of ordinary firmness from future First Amendment activities.'" *Id.* (quoting *Robinson*, 408 F.3d at 568). And the fifth factor requires the plaintiff

to allege "'that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution.'" *Id.* (quoting *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985)). A plaintiff can sufficiently plead "this element by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary or capricious, or that they were unnecessary to the maintenance of order in the institution." *Id.* (internal quotation omitted).

In his Response, Mr. Picozzi does not respond to Defendant's claims about the single grievance from 2018. Mr. Picozzi cites other grievances about the loss of his personal correspondence and legal mail in retaliation for his protected activity that do not mention Defendants Scally, Williams, Nash, or Oliver, and are therefore not relevant to his surviving claim after screening. (ECF No. 385 at 13.) Therefore, Mr. Picozzi has not presented a claim that includes the personal participation of any of the named Defendants, nor provided a genuine dispute of material fact as to retaliation. Summary judgment will be granted for Defendants on this claim.

**C. Fourteenth Amendment Access to Courts**

Mr. Picozzi's claim for denial of access to the court, after preclusion, relies upon his allegations that Defendants held law library requests for legal copies, case law, and requests to research in the library from 2019 through 2022. (ECF No. 10 at 20-21.) He claims that this forced him to miss court deadlines and lose summary judgment his case *Picozzi v. Clark County Detention Center*, 2:15-cv-00816-JCM-PAL. (*Id.* at 21; ECF No. 385 at 18.) He also alleges that an investigation into Defendant Graham, a law library supervisor, showed that he withheld inmate requests. (ECF No. 385 at 19.) Defendants argue that Mr. Picozzi cannot point to an instance where his legal mail was not received by the court.

Prisoners have a constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996). To establish a violation of the right of access to the courts, a prisoner must establish that he or she has suffered an "actual

injury." *Id.* at 349. The actual-injury requirement mandates that an inmate "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." *Id.* at 353. "The right of meaningful access to the courts extends to established prison grievance procedures." *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995), overruled on other grounds by *Shaw v. Murphy*, 532 U.S. 223, 230 n.2 (2001).

"[T]he object of the denial-of-access suit, and the justification for recognizing that claim, is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." *Christopher v. Harbury*, 536 U.S. 403, 413, (2002).

The Court agrees with Defendants that Mr. Picozzi has not presented a genuine dispute of material fact as to actual injury on this claim. Besides citing *Picozzi v. Clark County Detention Center*, 2:15-cv-00816-JCM-PAL, Mr. Picozzi has not pointed to evidence showing that he missed other court deadlines or that his legal claim was impeded as a result of Defendants' actions. Summary judgment in *Picozzi v. Clark County Detention Center* was granted on September 26, 2018, before Mr. Picozzi filed his amended complaint in his First State Case. This is therefore not a case upon which Mr. Picozzi can rely for his access to courts claim due to claim preclusion.

Defendant Graham's 2022 investigation turned up one inmate request that went unanswered that belonged to Mr. Picozzi from October 25, 2021, requesting case law, Administrative Regulations, and documents to e-file. (ECF No. 385-4 at 109; ECF No. 385-5 at 44.) The inmate request form states that "he needs the necessary documentation to file a civil lawsuit in state court, including to file as indigent and to get a financial certificate from accounting." (ECF No. 385-5 at 44.) The investigation also identified two grievances from Mr. Picozzi, filed September 22, 2021, and October 13, 2021, that stated that he was "being denied access to the law library and the courts as not one request I submitted has been answered

in 3 months." (ECF No. 385-5 at 8.) Inability to present a claim is an actual injury under the Fourteenth Amendment. *See Lewis v. Casey*, 518 U.S. 343, 348 (1996). Mr. Picozzi does not allege such an actual injury in his FAC or his Response to Summary Judgment. While he alleges that Defendant Graham failed to e-file documents in two cases, he does not identify those case names, whether they were in state or federal court, or when those filings should have occurred. Without more information on how Mr. Picozzi's access to the courts was impeded, the Court cannot find a genuine dispute of material fact on this claim.

**D. Eighth Amendment Deliberate Indifference to Medical Needs**

Mr. Picozzi alleges several theories of deliberate indifference to medical needs against Defendants: 1) that they unconstitutionally delayed his emergency medical care when he was actively bleeding in his cell; 2) that they unreasonably delayed surgery on his hemorrhoids; and 3) that they unreasonably delayed surgery and treatment for his back pain. (ECF No. 10 at 15.) Defendants generally contest Mr. Picozzi's claims by arguing that he received continuous care for all of his medical conditions and Mr. Picozzi's concerns are a matter of a difference opinion. (ECF No. 354 at 24.)

A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard— deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), overruled on other grounds by *Peralta v. Dillard*, 744 F.3d 176, 1082–83 (9th Cir. 2014). In an action seeking injunctive relief to prevent a substantial risk of serious injury, deliberate indifference should be determined in light of the defendant's "attitude[ ] and conduct at the time suit is brought *and persisting thereafter.*" *Farmer v. Brennan*, 511 U.S. 825, 845 (1994) (citation

omitted) (emphasis added).

To establish the first prong, "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted). To satisfy the deliberate indifference prong, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id.* "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* (internal quotations omitted). When a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay led to further injury. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference").

**1. Delaying Emergency Medical Care for Hemorrhoids**

Mr. Picozzi alleges that Defendants repeatedly left him without medical care when he was experiencing excessive rectal bleeding and requested a "mandown" or emergency grievance. Defendants argue that Mr. Picozzi cannot establish that he was denied medical care, and each of his claims is a reflection of a difference of opinion on the medical treatment provided. (ECF No. 354 at 24.) At issue are two incidents when Mr. Picozzi alleges: 1) that Defendant Barth failed to answer his request for toilet paper on November 27, 2020 and 2) that Defendants Arrey, Hennequin, Moka, and Livingston ignored his calls for emergency medical care on March 26, 2022. Defendants do not directly address any of Mr. Picozzi's factual allegations as they relate to the denial of emergency care for his hemorrhoids. (*Id.*)

On November 27, 2020, Mr. Picozzi requested toilet paper and a medical

response from Defendant Barth to handle his bleeding hemorrhoids, to which he answered, "I have none, use a sock or your hand!" (ECF No. 385-2 at 46.) Mr. Picozzi was forced to use his sheets, boxers, and socks to address his condition. (ECF No. 10 at 19; ECF No. 385-2 at 46-49.) Mr. Picozzi said that he was refused toilet paper from 9:00 p.m. on November 27, 2020, until 1:30 p.m. on November 28, 2020, which as a result caused him "mental anguish, pain, and suffering." (ECF No. 385-2 at 46.) In the response to the emergency grievance form, C/O Quinn wrote, "medical has confirmed med. condition. Supplies provided." (ECF No. 385-2 at 46.) Mr. Picozzi marked that he disagreed with the outcome of the grievance. (*Id.*)

On March 26, 2022, Mr. Picozzi alleges that he woke up to blood all over his boxers, socks, t-shirt, and sheets, and called for help with his emergency button. (ECF No. 10 at 17; ECF No. 385-2 at 51-52.) He caught the attention of Defendant Arrey, a correctional officer, and told him that he was bleeding badly, and requested an emergency grievance. (*Id.*) Defendant Arrey walked away. (*Id.*) Then, Defendant Hennequin came to his cell to drop food off at his slot. (*Id.*) Mr. Picozzi requested an emergency grievance again, to which Defendant Hennequin stated that she was busy serving breakfast. (*Id.*) No other officers attempted to help Mr. Picozzi until he tried to get the attention of Defendant Moka, another correctional officer, six hours later. (*Id.*) Defendant Moka refused to respond to his call. (*Id.*) Defendant Hennequin returned to do count, and Mr. Picozzi again attempted to request an emergency grievance and mandown to no avail. (*Id.* at 17-18.) Next, Mr. Picozzi attempted to flag down Defendant Livingston and still received no help. (*Id.*) In total, Mr. Picozzi was denied any medical response or requested help for sixteen hours. (*Id.*)

On May 20, 2022, Mr. Picozzi alleges that he again experienced serious rectal bleeding, and because he was not given medical care, passed out from blood loss. (*Id.*) There is no evidence of a grievance on this date to support Mr.

Picozzi's claim, and it will therefore not be analyzed by the Court.

**a) Serious Medical Need**

Mr. Picozzi has identified that his chronic hemorrhoids are a serious medical need, which Defendants do not meaningfully dispute in their motion.

The Ninth Circuit has identified three situations which indicate that a medical need is serious: (1) "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment;" (2) "the presence of a medical condition that significantly affects an individual's daily activities;" or (3) "the existence of chronic and substantial pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled in part on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997)).

Mr. Picozzi has suffered from chronic hemorrhoids for over ten years now. (ECF No. 10 at 14.) He has repeatedly had episodes of painful, severe bleeding that have left him with soiled clothing and sheets. (*Id*. at 20; ECF No. 385 at 4.) Multiple doctors throughout his time at HDSP have identified that Mr. Picozzi is a good candidate for hemorrhoidectomy. (ECF No. 10 at 13; ECF No. 385 at 4.) From 2017-2025, In sum, the evidence shows that doctors have identified Mr. Picozzi's hemorrhoids as a chronic injury, which causes substantial pain, that is worthy of comment or treatment. Defendants have not presented evidence to the contrary. Viewing the evidence in the light most favorable to Mr. Picozzi as the non-moving party, there is at least a genuine dispute of material fact as to whether his hemorrhoids constitute a serious medical need. *See Egberto v. Nevada Dep't of Corr.*, 678 F. App'x 500, 503 (9th Cir. 2017) (finding genuine dispute of fact as to whether back pain was serious medical need based on medical evaluations).

**b) Deliberate Indifference**

"A prison official is deliberately indifferent under the subjective element of

the test only if the official knows of and disregards an excessive risk to inmate health and safety." *Colwell,* 763 F.3d at 1066 (citations and internal quotations omitted). Officers may be deliberately indifferent for failing to provide care where a reasonable officer would have appreciated an obvious need for it. *Id.; Conn v. City of Reno,* 572 F.3d 1047, 1055 (9th Cir. 2009).

As to the November 27, 2020, incident, Defendant Barth does not dispute any of these facts: that he knew of Mr. Picozzi's medical condition, that it was serious, that Mr. Picozzi was covered in blood and asked for toilet paper, that Defendant Barth denied his request, and that Mr. Picozzi was only given toilet paper more than sixteen hours later. As a result of the delay, Mr. Picozzi was left in greater pain. While Mr. Picozzi's grievance record eventually reflected that he was given supplies, it does not provide a justification for the Defendant Barth's failure to provide him with any care at the time of his request, and Defendant Barth has not provided a declaration regarding his decision on November 27, 2020. Therefore, construing the facts in his favor as is appropriate at this stage of proceedings, Mr. Picozzi has posed a genuine dispute of material fact that Defendant Barth was deliberately indifferent to his medical need.

As to the March 26, 2022, incident, Defendants do not dispute that they were aware of Mr. Picozzi's hemorrhoid condition at the time that he requested emergency medical care, that they came to Mr. Picozzi's cell and saw him covered in blood. Defendants do not dispute that despite Mr. Picozzi calling for help for hours, and individually requesting that Defendants Arrey, Hennequin, Moka, and Livingston call a "mandown" in response to his profuse bleeding, each failed to offer Mr. Picozzi any help. Neighbors of Mr. Picozzi submitted declarations that he attempted to call for help several times on March 26, 2022, without response. (ECF No. 385-2 at 53-56.) One inmate stated that it is generally accepted that corrections officers will not respond to emergency calls from inmates in their cells. (ECF No. 385-2 at 56.) As a result of the delay, Mr. Picozzi continued to suffer in

pain for sixteen hours, causing him to lose so much blood he felt dizzy and light-headed and be in "great pain." (ECF No. 385-2 at 52; ECF No. 10 at 20.) Mr. Picozzi's grievance record does not reflect that Defendants ever provided a justification for the Defendants' failure to provide him with any care, and the relevant Defendants have not provided any declarations regarding their decisions on March 26, 2022. They do not dispute that a reasonable officer would have appreciated the obvious need to call for medical help. Therefore, construing the facts in his favor as is appropriate at this stage of proceedings, Mr. Picozzi has posed a genuine dispute of material fact that the Defendants were deliberately indifferent to his medical need.

**c) Qualified Immunity**

Defendants argue that even if there were a dispute of material fact as to a constitutional violation on the merits, they are entitled to qualified immunity.

The Supreme Court has set forth a two-part analysis for resolving government officials' qualified immunity claims. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Under the *Saucier* analysis, "[q]ualified immunity protects government officials from liability under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *Cuevas v. City of Tulare*, 107 F.4th 894, 898 (9th Cir. 2024) (internal quotation marks and citations omitted). In step one, the court considers whether the facts "[t]aken in the light most favorable to the party asserting the injury ... show [that] the [defendant's] conduct violated a constitutional right[.]" *Saucier*, 533 U.S. at 201. In step two, the court determines whether the right was clearly established at the time of the alleged violation. *Id.*

A right is clearly established if, at the time of the challenged conduct, "every reasonable official would have understood that what he [was] doing violate[d] that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citations and quotations omitted). Whether a right is clearly established for the purposes of qualified

immunity "depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). The right must not be stated as a broad general proposition, but rather must be defined with enough specificity to put a reasonable officer on notice that his conduct is unlawful. *Reichle v. Howards*, 566 U.S. 658, 664 (2012). Officers can be on notice that their conduct is unlawful even in novel factual circumstances where their specific actions egregiously or obviously violates the general rule. *See Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1073 (9th Cir. 2012); *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

Having found that there is a dispute of material fact as to whether there was a constitutional violation to satisfy step one of the analysis, the Court turns to whether there is a clearly established right. Defendants argue that there is no case law that would put Defendants on clear notice that their refusal to provide Mr. Picozzi with emergency medical treatment violated his Eighth Amendment rights, because he "received constant, continual, reasonable, and adequate medical care regarding his hemorrhoids and back pain." (ECF No. 354 at 29.)

The Ninth Circuit in *Clement v. Gomez* clearly established in 2002 that corrections officers cannot deny an inmate care where they are aware of a serious risk of injury. *Clement v. Gomez*, 298 F.3d 898, 906 (9th Cir. 2002). In *Clement*, the Ninth Circuit denied qualified immunity for officers that waited four hours to provide showers and medical attention to inmates who were exposed to pepper-spray that had been used to subdue other inmates nearby. *Id.* at 901-02. Despite the inmates' requests for help and complaining of breathing problems, and coughing, gagging, or choking, officers ignored their pleas while themselves taking turns to step outside for fresh air. *Id.* at 905. As in *Clement*, it is undisputed that the Defendants were aware of Mr. Picozzi's serious medical need. Despite his calls, and his neighbors' calls, for emergency medical care and assistance, Defendants did not offer Mr. Picozzi any aid for sixteen hours.

District courts have applied *Clement*'s rule in cases like Mr. Picozzi's. In *Harrell v. Blankenship*, the court denied summary judgment for non-medical correctional officers who refused to call a nurse after an inmate requested emergency medical help to administer his pain medication. *Harrell v. Blankenship,* No. EDCV15549CJCSP, 2018 WL 2121827, at *9 (C.D. Cal. Mar. 27, 2018), *report and recommendation adopted*, No. EDCV15549CJCSP, 2018 WL 2121817 (C.D. Cal. May 4, 2018). There, the plaintiff awoke in pain and pushed his emergency call button, to which the defendant responded but refused to contact the on-duty nurse to provide him with medication. *Id.* at *4. The plaintiff continued to press the emergency call button throughout the night, but the defendant did not respond. *Id.* The plaintiff did not receive any pain medication for three hours. *Id.* at 5. The next day, the same thing occurred: the plaintiff awoke in pain and pushed the call button. *Id.* at *5. Although the defendant responded and was aware of the plaintiff's request, he again refused to contact the on-duty nurse to provide him with care. *Id.* The plaintiff was again deprived any care or medication for three hours. *Id.*

The district court denied qualified immunity, stating that it was clearly established that an inmate had a right "to have prison officials respond to his cries for help and to the administration of pain medication," citing *Clement v. Gomez*, 298 F.3d 898, 906 (9th Cir. 2002) (citations omitted) ("The general law regarding the medical treatment of prisoners was clearly established [in 2002] .... officers could not intentionally deny or delay access to medical care."); *see also Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citing *McGuckin*, 974 F.2d at 1059–60) (internal quotation marks omitted) (reasoning "a serious medical need include[s] the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment"). *Id.* The court specifically rejected the defendant's argument that "the law is not clearly established as to whether a non-medical defendant can be deliberately indifferent

simply because he fails to respond to the complaints of a prisoner who is under medical treatment by medical professionals." *Id*; *see also May v. Williams*, 2:10-cv-576-GMN-LRL, 2012 WL 1155390, at *1-2 (D. Nev. Apr. 4, 2012) (denying qualified immunity for correctional officers that failed to respond to emergency call button for plaintiff's abdominal pain cause by hernia).

In this case, Defendants do not dispute that they were aware of Mr. Picozzi's serious medical need, and yet there is no evidence that anyone responded to his calls for help for sixteen hours. This is considerably longer than the three to four hours that the plaintiffs in *Clement* and *Harrell* were left waiting. Therefore, Ninth Circuit precedent clearly establishes that correctional officers cannot ignore an inmate's call for emergency help where an officer is aware of a serious medical need, and Defendants are not entitled to qualified immunity. Summary judgment is denied on this claim.

**2. Delaying Hemorrhoid Surgery**

Mr. Picozzi alleges that surgery on his hemorrhoids has been delayed for nine and a half years despite Defendants' knowledge of the severity of his condition, and that as a result, he continues to experience pain, bleeding, and discomfort.[1] (ECF No. 10 at 5; ECF No. 385 at 15.) Defendants argue that Mr. Picozzi was given continuous care for his hemorrhoids, and that any delay in surgery was a result of Mr. Picozzi's legal concerns or concurrent medical conditions. (ECF No. 354 at 24.)

Mr. Picozzi alleges that he arrived at HDSP in August 2016 with a pre-

[1] In his response, Mr. Picozzi also alleges that other treatment for his hemorrhoids suffered from deliberately indifferent delay, including requests for suppositories. (ECF No. 385 at 7.) The Court finds evidence in the record of several requests for suppositories that were responded to (ECF No. 385-2 at 8, 25, 26), and only one that went unanswered (ECF No. 385-2 at 118). This is not sufficient to state a claim for deliberate indifference. Therefore, the Court does not consider these allegations as part of Mr. Picozzi's claim for delayed care.

existing hemorrhoid condition. (ECF No. 10 at 14.) It is undisputed that he was referred for a colonoscopy on December 3, 2016, which he received on February 2, 2017, where he was officially diagnosed with hemorrhoids. (ECF No. 354 at 6; ECF No. 356-1 at 55.) Since this diagnosis, it is undisputed that Mr. Picozzi has been referred to get a hemorrhoidectomy at least seven times since 2018. (ECF No. 354 at 7, 8, 9; ECF No. 356-1 at 37, 41, 44, 49, 52, 69, 156, 171; ECF No. 35-1 at 8.) Despite his consistent referrals for a hemorrhoidectomy, the surgery has been delayed for nearly eight years since his first referral.

Mr. Picozzi alleges that he wrote medical kites and grievances on March 7, 2022, April 15, 2022, May 12, 2022, and May 23, 2022, all asking when he will have his surgery completed with no response, establishing that he was intentionally and unreasonably denied care through consistent delay. (ECF No. 10 at 17.) While Court cannot find evidence of those specific requests, the Court reviewed the entirety of Mr. Picozzi's record to understand if Defendants had any explanation for why his surgery was delayed. In reviewing Mr. Picozzi's exhibits, the Court considers in chronological order, starting in 2019, whether any of the named Defendants were deliberately indifferent when they failed to schedule or perform Mr. Picozzi's referred hemorrhoid surgery.

Mr. Picozzi's medical record shows that on August 28, 2019, he asked Defendant Pele-Taino to reschedule his surgery so it did not interfere with his September 2019 attorney visit. (ECF No. 356-3 at 14.) An unknown official replied to the request on September 3, 2019, stating that Mr. Picozzi's surgery "will be rescheduled to a later date as requested." (*Id.*)

On March 12, 2020, Mr. Picozzi asked Defendant Pele-Taino when he would get blood work so that he could get surgery on his hemorrhoids. (ECF No. 356-3 at 11). Defendant Cabrera replied on April 1, 2020, that Mr. Picozzi had been seen and everything "is getting processed." (*Id.*) On November 17, 2020, he asked Defendant Manalang when he would be scheduled with a cardiologist so that he

could complete his hemorrhoid surgery. (ECF No. 356-3 at 6). Defendant Cabrera responded on February 24, 2021, writing "scheduled and cardiologist needs diagnostic studies to be compiled." (*Id.*)

On August 3, 2021, Mr. Picozzi filed an informal grievance requesting that his July 2, 2021, appointment for hemorrhoid surgery be rescheduled after he refused to go because he was having an issue with his arm being swollen and was not told that he needed to stop his blood thinners. (ECF No. 354-1 at 63.) The reply on May 11, 2022, incorrectly stated that Mr. Picozzi had already had surgery on January 2, 2022. (*Id.*)

In 2022, Mr. Picozzi asked Defendant Cabrera to schedule his surgery. (ECF No. 356-3 at 15). She replied on an unknown date that she attempted to schedule his surgery, but that the doctor needs to wait for available hospitals that will admit inmates. (*Id.*) On October 29, 2022, Mr. Picozzi attached medical kites, inmate request forms, and an emergency grievance from June to October 2022 and requested information about his surgery. (ECF No. 354-1 at 32.) Justin McRoberts replied on April 24, 2023, that Mr. Picozzi's surgery was delayed due to medical conditions that occurred during surgical prep, heart palpitations, and chest pains, and that Mr. Picozzi was seen by a provider for a cardiac consult on April 17, 2023. (*Id.*) Although Mr. Picozzi alleges that he could not go through with surgery because Defendants failed to provide him information about discontinuing his blood thinner medication five days prior to surgery, his grievances reflect that he could not undergo surgery due to problems with his heart. (ECF No. 385-2 at 16.)

On February 19, 2023, Mr. Picozzi filed another inmate request directed to Defendant Cabrera about when he would receive his hemorrhoid surgery. (ECF No. 356-3 at 8). On February 27, 2023, Defendant Cabrera replied that his previous surgical appointment was canceled due to Mr. Picozzi's complaints of chest pains and palpitations, but that she did not receive any paperwork from

the doctor. (*Id.*) She said that she then faxed the doctor to reschedule the surgery and heard back that the doctor would call when there is availability. (*Id.*)

**a) Serious Medical Need**

Having already identified that Mr. Picozzi's hemorrhoids constitute a serious medical need, the Court turns to whether Defendants' failure to complete Mr. Picozzi's hemorrhoid surgery constituted deliberate indifference.

**b) Deliberate Indifference**

Mr. Picozzi has not shown that there is a genuine dispute of material fact that the delays of hemorrhoid surgery were due to deliberate indifference. Defendants consistently justify the rescheduling of Mr. Picozzi's surgeries supported by his medical record. (*See* ECF No. 356-1 at 5-9, 32, 169, 170, 174.) While a delay of surgery could amount to deliberate indifference where prison officials ignore the prescribed treatment of medical professionals, *see Snow*, 681 F.3d at 988; *Wakefield v. Thompson,* 177 F.3d 1160, 1165 & n. 6 (9th Cir.1999), here Defendants rescheduled and cancelled surgeries in response to Mr. Picozzi's legal visits and medical issues. As detailed above, surgeries were rescheduled so that Mr. Picozzi could see his attorney, schedule a visit for Mr. Picozzi to see a cardiologist, find a hospital that had appointments available for incarcerated patients, and due to Mr. Picozzi's complaints about chest pain. In one case, an official merely responded that the surgery was being "processed," however, a prison official's "denial of a grievance does not in and of itself rise to the level of a constitutional violation." *Williams v. Wood*, 223 Fed.Appx. 670, 672 (9th Cir. 2007). In each case, the named Defendants provided a reasonable response and justification for the delay of care that does not rise to the level of deliberate indifference.

Therefore, summary judgment will be granted for Defendants on this claim.

**3. Delaying Back Surgery and Treatment**

Mr. Picozzi alleges that surgery and other treatment on his back has been

unreasonably delayed despite Defendants' knowledge of the severity of his condition through multiple x-rays and MRIs. (ECF No. 10 at 5.) Mr. Picozzi argues that as a result of the delay, he has suffered more severe back pain. (ECF No. 385 at 15.) Like the delay on his hemorrhoid surgery, Defendants argue that although Mr. Picozzi has not received the surgical procedure, he has been provided a series of injections, imaging, and medication in response to his concerns demonstrating that they did not act with deliberate indifference towards a serious medical need. (ECF No. 354 at 24.)

Defendants do not dispute that Mr. Picozzi arrived at HDSP with an injured back. (ECF No. 10 at 4.) On November 23, 2016, he received imaging that identified a degenerative disc condition. (ECF No. 354 at 6; ECF No. 356-1 at 122). Like his hemorrhoid condition, Mr. Picozzi was referred for a surgical consult several times. (ECF No. 354 at 7, ECF No. 356-1 at 61, 65, 155, 168.) Therefore, Defendants cannot reasonably dispute that they were aware that he had a serious back injury that caused him pain and that several doctors confirmed could benefit from surgical intervention.

On February 26, 2020, Mr. Picozzi filed an informal grievance because he was transferred from HDSP to NNCC on February 13, 2020, for a second opinion on his back against his will. (ECF No. 354-1 at 113.) In his first level grievance on March 25, 2020, he alleges that he was sent with no additional medical information, including MRI results, x-rays, or doctor reports so that his legal documents could be stolen while he was away. (*Id.*) He requested a second opinion on his back in Las Vegas instead. (*Id.*) His second level grievance complained again about the lack of documents sent to NNCC. (*Id.*) Michael Minev replied to the second-level grievance on July 6, 2020, stating that Mr. Picozzi would be connected with the Director of Nursing to clarify the issues that he needed addressed. (*Id.* at 114.)

On June 29, 2020, Mr. Picozzi claims that when he met with the Director

of Nursing, Bob Faulkner, he was told that NNCC did not have his MRI results because Mr. Picozzi had refused an MRI due to being claustrophobic. (ECF No. 10 at 15; 385-1 at 57.) He grieved the issue on June 29, 2020, and July 17, 2020. (ECF No. 385-1 at 58, 59.) There was no formal response until April 10, 2023, which stated that his medical file was complete but reiterated at the time of his visit with Mr. Faulkner, there were no MRI results to share. (ECF No. 354-1 at 94.) Without MRI results, the doctor would not be able to recommend surgery or other medical intervention.

On October 20, 2020, Deputy Director of Programs Brian Williams wrote to Mr. Picozzi regarding his medical concerns, including his back. That letter stated that Mr. Picozzi had consultations with Dr. Wulff and Dr. Moore about his back, but that Mr. Picozzi refused to be seen by a specialist for a second opinion. (ECF No. 385-1 at 69.)

Mr. Picozzi also alleges that Defendant Cabrera told him that he was scheduled for physical therapy but that the appointment never occurred. (ECF No. 385 at 15; 385-2 at 34.) He says he has been denied follow-ups and pain medication for his back for more than two years. (*Id.*) Medical records reflect he went to a physical therapy appointment on May 29, 2024. (ECF No. 385-2 at 33.) Defendant Cabrera attempted to schedule him a follow-up appointment for physical therapy and injections on June 20, 2024. (ECF No. 385-2 at 34; ECF No. 354-1 at 180.)

**1. Serious Medical Need**

Mr. Picozzi has been living with “severe back pain” for more than ten years now. (ECF No. 385 at 4.) In 2016, he was diagnosed with degenerative disc condition and referred for surgery several times in the intervening years. (ECF No. 10 at 14.) Like his hemorrhoids, it is clear from Mr. Picozzi’s medical record that his back condition was both chronic and caused substantial pain and “worthy of comment or treatment” by a reasonable doctor. *See Colwell*, 763 F.3d

at 1066. Defendants do not provide any evidence to the contrary, and do not dispute that his back pain was considered a serious medical need. Therefore, viewing the evidence in the light most favorable to Mr. Picozzi, he has posed at least a genuine dispute of material fact as to whether his back condition constituted a serious medical need.

**2. Deliberate Indifference**

As with his hemorrhoid surgery, Mr. Picozzi has not established a genuine dispute of material fact that his back surgery was delayed in deliberate indifference to his serious medical needs. The grievances indicate when he was not given answers regarding his back, that he was connected with the Director of Nursing to understand his treatment plan. In another instance, Mr. Picozzi refused to be seen by a specialist for a second opinion. He does not point to evidence that a specific Defendant purposefully delayed his care. While Mr. Picozzi alleges that he has been denied treatment for his back, he does not point to any specific kites, grievances, or inmate requests in the record that indicate that requests for pain medication were denied. His medication record indicates that he was regularly prescribed and given aspirin, although it does not indicate in response to what treatment. (*See generally* ECF No. 356-2.) Without an allegation or record evidence that a specific Defendant was responsible for his delay of back surgery, Mr. Picozzi has not posed a genuine dispute of material fact that the care he received for his back was deliberately indifferent. Therefore, summary judgment will be granted for Defendants on this claim.

**E. Eighth Amendment Conditions of Confinement**

Mr. Picozzi alleges that in addition to being denied medical care for his hemorrhoid condition, he was also repeatedly denied supplies to properly clean himself and his cell while he was bleeding. (ECF No. 10 at 17-18.) As a result, he says that he got into fights with his cellmates, putting his safety at risk, and experienced rashes and blisters from constant exposure to blood. (*Id.*) Defendants

claim there is “no evidence” that shows Mr. Picozzi did not have adequate hygiene products to clean him or his cell, that he was attacked by his cell mates, or that he had any rashes or blisters from exposure to blood. (ECF No. 354 at 22.)

To establish deliberate indifference under the Eighth Amendment, a prisoner must show that a prison official “(1) exposed [the prisoner] to a substantial risk of serious harm; and (2) was deliberately indifferent to [the prisoner's] constitutional rights.” *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1248 (9th Cir. 2016).

First, whether a substantial risk of serious harm existed is an objective inquiry, courts “look to whether the risk is not one that today's society chooses to tolerate.” *Id.* (citation omitted). To meet this standard, a plaintiff must allege a deprivation of “the minimal civilized measure of life's necessities.” *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). “[A] lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment.” *Anderson v. County of Kern*, 45 F.3d 1310, 1314 (9th Cir. 1995).

To satisfy the second element, which is subjective, a plaintiff must prove that the prison official knew of and disregarded “an excessive risk to inmate health and safety.” *Farmer*, 511 U.S. at 837. This means that the “official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.” *Id.* However, a plaintiff “need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.” *Id.* at 842.

Although the allegations are concerning, Mr. Picozzi has not met his evidentiary burden to show a genuine dispute of material fact that he was exposed to a substantial risk of serious harm as a result of living with a cell mate and being denied toilet paper.

To begin, Mr. Picozzi has not provided evidence that he was ever attacked

by a cell mate as a result of his hemorrhoid condition. His disciplinary record only reflects one instance of a fight with a cell mate; in that instance, the record indicates that Mr. Picozzi had harassed and threatened his cellmate "mainly regarding poor hygiene habits," because Mr. Picozzi is "hygiene-oriented" and his cellmate was not. (ECF No. 354-7 at 4.) There is no other evidence of Mr. Picozzi being harmed by his cell mate as a result of his hemorrhoid condition.

Mr. Picozzi has also not met his evidentiary burden to show that the lack of toilet paper resulted in a substantial risk of serious harm. He alleges that on more than one occasion, he was required to use his boxers, socks, t-shirt, and sheets to respond to his bleeding hemorrhoids in his cell. (ECF No. 10 at 17.) He called on Defendants to provide him with toilet paper or other supplies to clean himself and his cell to no avail and was left for up to sixteen hours without additional supplies. (ECF No. 385 at 17.) It is not clear based on the record provided, however, whether this was a lack of sanitation that was "severe or prolonged" that resulted in an "excessive risk to inmate health and safety." Mr. Picozzi alleges that the conditions he suffered under were temporary, and the record shows that at least in one instance, he was eventually provided with additional supplies. (*See* ECF No. 385-2 at 46.) The Court also cannot find evidence in the record that Mr. Picozzi suffered from rashes or blisters as a result of exposure to blood. Without more evidence surrounding the context of the incidents where Mr. Picozzi was unable to immediately access cleaning supplies, he cannot meet his evidentiary burden to demonstrate a substantial risk of serious harm under Ninth Circuit precedent. Therefore, summary judgment will be granted for Defendants on this claim.

## II. Conclusion

It is therefore ordered that Defendants' Motion for Summary Judgment is GRANTED IN PART as it relates to Mr. Picozzi's claims for First Amendment retaliation, Fourteenth Amendment access to the courts, Eighth Amendment

deliberate indifference to medical need as it relates to his hemorrhoid and back surgery, and Eighth Amendment conditions of confinement.

It is further ordered that Defendants' Motion for Summary Judgment is DENIED as it relates to Mr. Picozzi's claim for Eighth Amendment deliberate indifference to his medical need in response to emergency medical care for his hemorrhoids.

Dated this 30th day of September, 2026.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE